UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

vs.                                                                                          Case No. 8:13-CR-187-T-27AEP

VANESSA COOPER
CANETHA JOHNSON
SELENA BLANCHARD
_____/

## ORDER

**BEFORE THE COURT** are Defendant Canetha Johnson's Renewed Motion for Judgment of Acquittal Pursuant to Rule 29 (Dkt. 191), joined in and adopted by Defendant Selena Blanchard, (Dkts. 195, 196), Defendant Vanessa Cooper's Renewed Motion for Judgment of Acquittal (Dkt. 193), and the Government's "response"(Dkt. 197).[1] Upon consideration, the renewed motions for judgment of acquittal are DENIED.

Under Rule 29, a conviction will be upheld if a reasonable jury could conclude that the evidence established guilt beyond a reasonable doubt. *United States v. Browne*, 505 F.3d 1229, 1253 (11th Cir. 2007). The evidence is viewed in the light most favorable to the Government, with all reasonable inferences drawn in favor of the Government, and all credibility choices considered in favor of the jury's verdict. *United States v. Keen*, 676 F.3d 981, 989 (11th Cir. 2012). The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every

---

[1] Unfortunately, the Government's response (Dkt. 197) makes no effort to address Defendants' substantive arguments, does not address the sufficiency of the evidence, and even fails to cite applicable authority. Rather, it merely recites that "the defendants have once again failed to establish that, when taking the evidence adduced at trial in a light most favorable to the government, a 'reasonable fact-finder' could not conclude that the evidence established their guilt beyond a reasonable doubt." That conclusory statement does nothing to assist the Court. The adversary system demands more.

conclusion except that of guilt, so long as a reasonable jury could find that the evidence established guilt beyond a reasonable doubt. *United States v. Perez-Tosta*, 36 F.3d 1552, 1556-57 (11th Cir. 1994).

To sustain each Defendant's guilt of conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 846 and § 841(b)(1)(A)(viii) as charged in Count One, the evidence must establish (1) an agreement between two or more persons to commit the offense, and (2) the defendant's knowing and voluntary participation in the conspiracy. *United States v. Ohayon*, 483 F.3d 1281, 1292 (11th Cir. 2007). A conspiracy may be established by circumstantial evidence and "may be inferred from a 'concert of action.'" *United States v. Westry*, 524 F.3d 1198, 1212 (11th Cir. 2008); *Glasser v. United States*, 315 U.S. 60, 80 (1942); *United States v. Keller*, 916 F.2d 628, 632 (11th Cir. 1990), *cert. denied*, 499 U.S. 978 (1991).

With respect to Count Two, possession with intent to distribute and distribution, the evidence must establish that the defendant knowingly possessed the methamphetamine with the intent to distribute it, and an intent to distribute may be inferred from the quantity involved. *United States v. Sarmiento*, 744 F.2d 755, 761 (11th Cir. 1984).

**Canetha Johnson**

With respect to Defendant Johnson's contention that the evidence was insufficient and consistent only with mere association and presence, the evidence refutes that contention.[2] While the inference of participation in the conspiracy from presence and association with the conspirators alone

---

[2] Johnson's Rule 29 motion was denied at the close of the Government's case. After she presented her case, Johnson did not renew her Rule 29 motion. Although the Government fails to recognize this, she waived any objection to the sufficiency of the evidence and must demonstrate manifest injustice to prevail, that is, she must demonstrate that "the evidence on a key element of the offense is so tenuous that a conviction would be shocking." *United States v. Bichsel*, 156 F.3d 1148, 1150 (11th Cir. 1998); *United States v. Mostellar*, 165 Fed.Appx. 831, 836 (11th Cir. 2006). Johnson does not satisfy this requirement.

is insufficient to convict, such an inference is permissible in evaluating the totality of the circumstances. *Id.* Stated another way, "[a]lthough mere presence at the scene of a crime is insufficient to support a conspiracy conviction, presence nonetheless is a probative factor which the jury may consider in determining whether a defendant was a knowing and intentional participant in a criminal scheme," and "[p]articipation in a conspiracy can be inferred from 'a development and collocation of circumstances.'" *United States v. McDowell*, 250 F.3d 1354, 1365 (11th Cir. 2001) (citations omitted).

Considered in its totality, the evidence was sufficient for a reasonable jury to conclude beyond a reasonable doubt that Johnson was a knowing participant in the conspiracy to possess and distribute methamphetamine, based on the concert of action engaged in by the Defendants. Her trip to Tampa with Cooper and Blanchard from San Diego, their meeting with Raul Carbajal to deliver the methamphetamine, and their stay at the Ramada Inn in Tampa was typical of several trips Cooper, Blanchard and Jeannette Vega had made on behalf of Roberto Carbajal in the past.

Vega described the manner in which female couriers working for Roberto's drug trafficking organization transported methamphetamine from Mexico into the United States, and then to Florida. Essentially, the couriers secreted the packages in their vaginas in cylindrical packages referred to during trial as "burritos." She identified Government Exhibit #2, a photograph of the methamphetamine the women delivered to Carbajal, as typical of the method used, which she called "vagina smuggling." Vega described her first smuggling trip to Tampa she made with Stephanie, and how they secreted the drugs in their vaginas.

Vega had used this method to smuggle methamphetamine with Defendants Cooper and Blanchard on prior occasions. For example, she described a smuggling trip from Mexico into the

United States with Cooper and Blanchard and the delivery of the methamphetamine to Bernice, Roberto's wife, in San Isidro. Regarding another smuggling trip to Tampa, which was ultimately aborted, she was told by Roberto that Vanessa's sister (i.e. Johnson) was supposed to go but could not make it. The other two participants were Cooper and Blanchard. Vega, Cooper and Blanchard each secreted a "burrito" of methamphetamine in their vaginas, and entered the San Diego Airport bound for Tampa. Blanchard was detained by airport security, however, and Vega and Cooper left the airport. Vega subsequently learned from her "boss" that Blanchard had actually made it to Tampa. Vega then flew to Tampa alone carrying methamphetamine and delivered it to Raul Carbajal. She was not able to locate Blanchard, however, and returned to San Diego, where she was eventually arrested.

With respect to the charged conspiracy and possession, the DEA received intelligence that the three Defendants were transporting methamphetamine on a flight from San Diego to Tampa. Surveillance of Johnson, Cooper and Blanchard began after they arrived in Tampa. They were seen entering a red vehicle driven by Raul Carbajal, who dropped them off at the same Ramada Inn which had been described by Vega from her trip she made to Tampa alone, when she looked for Selena Blanchard. After dropping off the three women, Carbajal was arrested, and three "burrito" packages of methamphetamine were found on the rear floorboard of his car. The packages were photographed and the photograph was introduced as Government Exhibit # 2, which was, as noted, identified by Vega as typical vagina smuggling packages.

Regarding the April 2, 2013 events, Carbajal testified that Roberto told him to expect <u>three</u> women. Roberto called him to tell him the three women had arrived in Tampa. Carbajal testified that he picked the three women up at the airport and dropped them off at the Ramada Inn. When he

4

picked them up, Johnson and Blanchard got in the back seat and Cooper sat in the front passenger seat. He told the women to put "it" on the floor. The women took the packages out of their purses and put them on the floor. These were the same packages found in his possession by the agents when he was arrested.

Carbajal identified each Defendant. Regarding prior pick ups from female couriers, Carbajal remembered seeing Cooper more than five times and Blanchard more than three times. He remembered "Janet," a white female he knew as "Guerra." Carbajal also corroborated Vega's testimony about her trip to Tampa with Stephanie and the trip she made alone to Tampa when she could not locate Selena Blanchard. He did not recall seeing Johnson before April 2, 2013.

Agent Clark took a post-*Miranda* statements from Johnson. At first, she said she was in Tampa to make contact with her ex-husband she had not seen in years. Then she said she hadn't seen him in a year. Initially, she said she had taken a cab from the airport, then admitted she rode with Carbajal from the airport. Finally, she admitted that the purpose of the trip was to bring the "stuff" to Tampa, and admitted giving the "stuff" to "a Mexican male" in the car. She told Clark it was her first trip and she was to be paid $1100-1200, an amount which was corroborated by Carbajal in his testimony.

In sum, drawing all reasonable inferences in favor of the Government, the evidence was sufficient for a reasonable jury to conclude beyond a reasonable doubt that Johnson was a knowing and voluntary participant in the conspiracy charged in Count One. Airline records demonstrated that Johnson, Cooper and Blanchard booked their flight to Tampa together on March 30, 2013. Consistent with what Roberto Carbajal told Raul Carbajal, Johnson arrived in Tampa with her two co-defendants and met him. Johnson got into the rear seat of Carbajal's vehicle, where the drugs

5

were ultimately found. Based on the shape and size of the packages, and Vega's description of the methodology used to smuggle drugs by female couriers, the evidence established circumstantially that each Defendant carried one of the three packages on the flight to Tampa.

To convict Johnson for possession of methamphetamine with intent to distribute, the Government must show both knowing possession and an intent to distribute. *United States v. Gardiner*, 955 F.2d 1492, 1495 (11th Cir. 1992). Constructive possession is sufficient, and intent to distribute can be inferred from the quantity of methamphetamine. *Id.* In the unusual circumstances of this case, Johnson's possession and intent to distribute methamphetamine can be reasonably inferred from not only the quantity of methamphetamine but also its unique packaging and manner in which such packages were typically secreted on the bodies of female couriers. Carbajal's description of the women putting the packages on the rear floor of his vehicle after he told them to place it there, at a minimum, demonstrates constructive possession by Johnson. And, as discussed, a reasonable inference can be drawn that she actually possessed one of the "burritos," considering the description of the "vagina smuggling" by Vega, the shape and size of the three packages found in Carbajal's car, and his testimony that the women delivered the methamphetamine to him.

**Vanessa Cooper and Selena Blanchard**

In addition to the evidence recounted above with respect to Johnson, substantial evidence was introduced from which a reasonable jury could conclude beyond a reasonable doubt that Cooper and Blanchard were guilty of conspiring to possess with intent to distribute methamphetamine and possessed methamphetamine with the intent to distribute it to Carbajal. The evidence demonstrated numerous telephone calls between Roberto/Cooper, Cooper/Mirabelle, Cooper/Raul Carbajal, and Cooper/Blanchard corresponding to various smuggling trips. Vega identified several telephone

numbers in her contacts list as Vanessa Cooper's and Selena Blanchard's, as well as Roberto's.

Cooper and Blanchard's vagina smuggling trips from Mexico to San Diego described by Vega were corroborated by Border Patrol Agent Hecmanczuk, who determined that since January 2013, Vega made approximately 45 crossings, Blanchard made approximately 39, and Cooper made approximately 150. Airline and hotel records demonstrated that Cooper traveled from San Diego to Tampa in December 2012, that Cooper and Blanchard traveled between Tampa and San Diego in February 2013, and that Blanchard crossed the border on February 10, 2013. And in March 2013, airline records demonstrated that Cooper, Blanchard and Vega booked travel from San Diego to Tampa together, and that Selena Blanchard checked into the Ramada Inn in Tampa as Vega had described, and as corroborated by Raul Carbajal. Cooper also made post-*Miranda* admissions.

## Conclusion

In sum, viewing the evidence in the light most favorable to the Government, a reasonable jury could find each Defendant guilty of the offenses charged in Counts One and Two beyond a reasonable doubt. Their respective motions (Dkts. 191, 193) are therefore denied.

**DONE AND ORDERED** this 22nd day of October, 2013.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Counsel of Record